**IN THE COURT OF APPEALS OF IOWA**

No. 13-2020
Filed June 25, 2014

**IN THE MATTER OF L.L.,
Alleged to be Seriously
Mentally Impaired,**

**L.L.,**
    Respondent-Appellant.
_____

    Appeal from the Iowa District Court for Johnson County, Paul D. Miller,

Judge.


    Respondent appeals his involuntary commitment for serious mental

illness. **AFFIRMED.**


    Ellen Ramsey-Kacena, Cedar Rapids, for appellant.

    Thomas J. Miller, Attorney General, Gretchen Witte Kraemer, Assistant

Attorney General, and Janet Lyness, County Attorney, for appellee.


    Considered by Vaitheswaran, P.J., and Tabor and Bower, JJ.

**TABOR, J.**

A seventy-five-year-old veteran appeals a ruling by the district court that he is seriously mentally impaired, lacks sufficient judgment to reach responsible treatment decisions, and poses a danger to himself if he remains at liberty without treatment. Because the record contains clear and convincing evidence to support the district court's ruling, we affirm the commitment under Iowa Code chapter 229 (2013).

## I. Background Facts and Proceedings

L.L.'s daughter took him to the Iowa City Veterans Administration (VA) Medical Center on September 6, 2013. She reported he was burning holes in the walls and furniture of his apartment in Cedar Falls. She was concerned about her father's ability to care for himself and manage his own finances. A VA staff psychiatrist examined L.L., who was born in 1938, and determined he suffered from dementia and required full-time hospitalization. While hospitalized L.L. showed poor judgment by placing a metal Ensure can in the microwave, locking himself in a public restroom, and threatening gun violence against the staff. After a hearing on September 30, 2013, a magistrate ordered L.L. to be committed to the VA hospital for a complete psychiatric evaluation and appropriate inpatient treatment.

On October 7, 2013, L.L. appealed the findings of the magistrate to the district court under section 229.21(4). Before the district court held a hearing on the appeal, the VA staff determined L.L. could be placed in a less restrictive environment. On November 4, 2013, the VA discharged L.L. to Windsor Manor,

an unlocked assisted living facility. The transfer "did not go well"—to say the least. L.L. became angry and uncooperative with the facility personnel and began cursing at them. He then left the facility without permission and went to a nearby grocery store to buy alcohol—but had no money. He refused to leave the store for two hours, engaging in a standoff with police. Authorities took him to a local emergency room and then returned him to the VA inpatient psychiatric unit that same day.

In its de novo review, the district court held a hearing on November 18, 2013. On the witness stand, Dr. Thomas Wassink, a VA staff psychiatrist, confirmed a diagnosis of dementia related to L.L.'s long history of alcohol abuse. The psychiatrist testified neuropsychological testing showed significant deficits in executive functioning that impaired L.L.'s ability to make reasoned and responsible decisions regarding his medical care and finances. Dr. Wassink's report noted L.L. had "several recent inpatient medical admissions for serious malnutrition and for fluid overload as a result of not following his necessary medical treatments." L.L. also suffered from high blood pressure, chronic obstructive pulmonary disease, and asthma—all of which required medicine management that the psychiatrist opined L.L. could not handle at home.

On November 19, 2013, the district court ruled the State proved by clear and convincing evidence L.L. was seriously mentally impaired. L.L. now appeals.

## II.    Standard of Review

An involuntary commitment proceeding is a special action triable to the court as an ordinary action at law. *In re Oseing*, 296 N.W.2d 797, 800-01 (Iowa

1980).  For involuntary commitment proceedings, we review challenges to the sufficiency of the evidence for correction of legal error.  *In re B.B.*, 826 N.W.2d 425, 428 (Iowa 2013).  The district court's findings of fact are binding on appeal if supported by substantial evidence*.  In re J.P.*, 574 N.W.2d 340, 342 (Iowa 1998).  Evidence is substantial if a reasonable trier of fact could conclude the findings were established by clear and convincing evidence.  *Id.*  Clear and convincing evidence is a less onerous burden than proof beyond a reasonable doubt, but more stringent than a preponderance of the evidence.  *Id.*  We must have "no serious or substantial doubt about the correctness of a particular conclusion drawn from the evidence."  *Id.*

## III.    Analysis

L.L. asserts the State did not present sufficient evidence at the commitment hearing to support a finding he was seriously mentally impaired and required inpatient treatment.  In the parlance of involuntary commitments, "seriously mentally impaired" means:

> [T]he condition of a person with mental illness and because of that illness lacks sufficient judgment to make responsible decisions with respect to the person's hospitalization or treatment, and who because of that illness meets any of the following criteria:
> a. Is likely to physically injure the person's self or others if allowed to remain at liberty without treatment.
> b. Is likely to inflict serious emotional injury on members of the person's family or others who lack reasonable opportunity to avoid contact with a person with mental illness if the person with mental illness is allowed to remain at liberty without treatment.
> c. Is unable to satisfy the person's needs for nourishment, clothing, essential medical care, or shelter so that it is likely that the person will suffer physical injury, physical debilitation, or death.

Iowa Code § 229.1(17).

The statutory definition can be boiled down to three elements: the person (1) has a mental illness; and because of that illness, (2) lacks sufficient judgment to make responsible decisions with respect to his hospitalization or treatment; and (3) is likely to inflict physical injury on the person's self or others or is unable to satisfy the person's physical needs. *See J.P.*, 574 N.W.2d at 343.

We conclude the State's proof satisfied all three elements by clear and convincing evidence. The VA psychiatrists diagnosed L.L. with dementia due to chronic alcohol consumption. Dr. Wassink explained dementia is a serious mental illness recognized by the diagnostic manual known as the DSM-5.

The psychiatrist also testified to L.L.'s lack of judgmental capacity. Dr. Wassink found L.L. was "consistently disoriented" and "had no insights into the fact that he had impairments." Neuropsychological testing showed L.L. had impaired concentration and short-term memory loss. L.L. was unable to make reasoned decisions about his safety. L.L's behavior when transferred to Windsor Manor also underscored his inability to make responsible choices in his best interest. He left the facility without permission and engaged in a standoff with police.

Turning to the dangerousness prong, we find substantial evidence it is likely—in other words, probable or reasonably to be expected—that if L.L. were not hospitalized, he would harm himself or others or be unable to meet his physical needs. *See Oseing*, 296 N.W.2d at 801. The record includes recent acts which justify our prediction. *See In re Mohr*, 383 N.W.2d 539, 542 (Iowa 1986). His daughter initially brought L.L. to the VA because of his dangerous

habit of burning holes in his furniture and apartment walls. L.L.'s risky behavior following his transfer to Windsor Manor was likewise a strong indicator of future dangerousness. Moreover, the psychiatrist testified L.L.'s continued consumption of alcohol would worsen his dementia and increase his risk for physical harm. L.L. also could not manage the medication prescribed for his chronic ailments, according to the VA staff. All of these circumstances point to the probability of harm if L.L. does not receive treatment at the VA hospital.

We find ample evidence to affirm the order of commitment.

**AFFIRMED.**